UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
YAMINA BENSBEUR, AS ADMINISTRATIX
OF THE ESTATE OF AZZ-EL ISLAM
BENSBEUR, DECEDENT,

                       Plaintiff,

              - against -

THE RIHGA ROYAL HOTEL a/k/a THE NEW
LONDON HOTEL,

                      Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**

08-CV-2852 (RRM)(RER)

**ROSLYNN R. MAUSKOPF, United States District Judge.**

      Plaintiff Yamina Bensbeur, as administratix of the estate of decedent Azz-El Islam Bensbeur ("decedent"), brings this wrongful death action against the Rihga Royal Hotel a/k/a the New London Hotel ("the Hotel" or "defendant"), alleging that the Hotel, due to its own negligence and recklessness, allowed a dangerous and unsafe condition to exist by failing to provide decedent with proper protection and security and by supplying narcotics and alcohol to the decedent's room. Defendant has moved for summary judgment, claiming that there are no genuine issues of material fact and plaintiff is unable to establish a *prima facie* case of negligent supervision. (*See* Doc. No. 33.) Plaintiff has cross-moved for summary judgment on the same issue. (*See* Doc. No. 37.) For the reasons set forth below, the Court grants defendant's motion in its entirety, denies plaintiff's cross-motion, and dismisses this action.

# BACKGROUND[1]

Plaintiff commenced the present action in the Supreme Court of the State of New York, County of Kings on June 17, 2008. (*See* Notice of Removal (Doc. No. 1) ¶1.) On July 16, 2008, pursuant to 28 U.S.C. §§ 1441 and 1446, defendant removed the case to this Court as an action over which the Court has original diversity jurisdiction under 28 U.S.C. § 1332. (*Id*. ¶¶ 5, 10-11.)

The factual background of the case is as follows. On July 11, 2006, a guest by the name of Timothy DeAngelis (a/k/a Tom Parker) checked into the Hotel and was given suite 2110. (Def. 56.1 Stmt. (Doc. No. 34) ¶ 1.) Although registration records reflect a party of one, the Hotel's CCTV surveillance from that day reflects that DeAngelis was accompanied by a young female and male later identified to be his daughter Elizabeth DeAngelis and her boyfriend, decedent Azz-El Islam Bensbeur. CCTV surveillance reflects that all three guests were escorted to suite 2110 by the lobby porter. (*See* Hotel Registration Records (Doc. No. 35, Attach. 12); CCTV Surveillance Incident Narrative Report (Doc. No. 39, Attach. 5).) According to room service records, later in the evening on the same day, the following four deliveries of food and alcohol were made to suite 2110 between 7:24 p.m. and 9:45 p.m.: 1) a bottle of wine at 7:24 p.m.; 2) various food items at 7:41 p.m.; 3) three Coronas and three Budweisers at 7:45 p.m.; and 4) one bottle of wine and various food items at 9:45 a.m.. (Hotel Service Tickets (Doc. No. 35, Attach. 13).) All four deliveries were charged to and paid by DeAngelis. (Record of Room Charges (Doc. No. 35, Attach. 14).) Between 9:30 p.m. and 10:55 p.m. approximately, lobby porter Phil Lenzy made three trips to suite 2110 for the following purposes: 1) to deliver prescription drugs picked up from a pharmacy; 2) to get money from DeAngelis to pick up cigars

---

[1] The following facts are taken from the Local Rule 56.1 statements submitted by the parties and the affidavits and exhibits submitted in connection with the motions. The facts are uncontroverted, except as noted.

and soda; and 3) to deliver the cigars and soda. (Def. 56.1 Stmt. ¶¶ 19-29.) Mr. Lenzy testified at his deposition that on his second trip to suite 2110, he entered the room and observed a young girl sleeping in a bed and an older man and a young male seated at the table. (*Id*. ¶ 27.)

Between 1:00 a.m. and 2:00 a.m. on July 12, 2006, a housekeeping attendant at the Hotel by the name of Kazi Hossain went to suite 2110 at the request of his manager to clean the room. Mr. Hossain heard loud music playing when he knocked on the door. Upon entering, he observed empty wine bottles and food, a broken lamp, vomit next to the bed and a man lying face down on the bed "in the proper position." (*Id*. ¶¶ 34-44; Hossain Dep. (Doc. No. 35, Attach. 8) at 56, 147.) Mr. Hossain testified at his deposition that the older man in the room told him the vomit came from the young man, who had thrown up from drinking too much. The man also told Mr. Hossain not to make the bed because the boy was drunk. (Hossain Dep. at 60, 147-48.) When cleaning the room, Hossain retrieved from the garbage a cell phone that the young woman had asked him to help her find, and further observed in the trash one medicine vial and some underwear; he could not recall if there were pills in the vial, and he threw the garbage bag away. (*Id*. at 70.)

Security officers at the Hotel were dispatched to suite 2110 twice, at 1:23 a.m. and 2:04 a.m. in response to noise complaints from neighbors. (Def. 56.1 Stmt. ¶¶ 61-68.) The first security officer dispatched to suite 2110 reported that a female had answered the door, told him that she had vomited but everything alright, and lowered the music at his request. (*See* Laskas Investigative Report (Doc. No. 35, Attach. 16).) The second security officer dispatched at 2:04 a.m. was told by a female that the guests in suite 2110 were going to sleep and found no music coming from the room when he returned to the 21st floor ten minutes later. (*See* Carrasquillo Investigative Report (Doc. No. 35, Attach. 17).)

3

In the afternoon of July 12, 2006, security officer Rene Nunez was patrolling the second floor of the Hotel when he witnessed a distressed girl talking to the concierge. The girl told him that her father and boyfriend had been drinking the night before, that her boyfriend was passed out, and that her father was still drunk and potentially aggressive. (Nunez Dep. (Doc. No. 39, Attach. 4) at 41, 43.) At 1:10 p.m. on July 12, the director of security at the Hotel, Dominic Pezzo, entered suite 2110 in response to a code green medical emergency call from security officer Nunez. (Pezzo Dep. (Doc. No. 35, Attach. 9) at 43.) Upon entering, a young girl was hysterically crying and saying that her boyfriend is dead. In the bathroom, Mr. Pezzo found DeAngelis standing naked with a towel over his head and the decedent lying on the floor, blue in the body and appearing to be dead. (Def. 56.1 Stmt. ¶¶ 50-54; Pezzo Dep. at 51.) Mr. Pezzo testified that DeAngelis said he had just given decedent a shower and insisted that decedent was not dead. (Pezzo Dep. at 54.) The police arrived within three minutes, as Mr. Pezzo had already called 911 prior to entering the room. (*Id*. at 57.)

On July 13, 2006, an autopsy performed on decedent noted his age as 18 and determined the cause of death to be acute intoxication due to combined toxic effects of alprazolam, ethanol, and oxycodone. (Autopsy Report (Doc. No. 35, Attach. 11).)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the non-moving party. *See id.* at 249 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). Thus, the court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Any evidence in the record of any material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment. *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, such that it is entitled to judgment as a matter of law, then "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (citing *Anderson*, 477 U.S. at 252; *Matsushita*, 475 U.S. at 586.) Instead, the non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id.* at 248; *see also Matsushita*, 475 U.S. at 586.

**DISCUSSION**

A federal court sitting in diversity jurisdiction applies "state substantive law and federal procedural law" under the *Erie* doctrine. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). "To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 489 N.E.2d 1294, 1294-95 (1985)); *see also Duguay v. City of New York*, --- F. Supp. 2d ---, 2012 WL 955392, at *7 (S.D.N.Y. 2012). "A finding of negligence may be based only upon the breach of a duty. . . . Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists." *Darby v. Compagnie Nat'l Air France*, 753 N.E.2d 160, 162 (2001) (citations omitted). "In so doing, courts identify what people may reasonably expect of one another. In assessing the scope and consequences of civil responsibility, they define the boundaries of 'duty' to comport with what is socially, culturally and economically acceptable." *Id*. (citations omitted).

"[L]andowners have a duty to protect tenants, patrons or invitees from *foreseeable* harm caused by the criminal conduct of others while they are on the premises." *Vega v. Fox*, 457 F. Supp. 2d 172, 187 (S.D.N.Y. 2006) (citing *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1061 (2001)) (emphasis added); *see, e.g., Mays v. City of Middletown*, 895 N.Y.S.2d 179, 182 (App. Div. 2d Dep't 2010) ("Although a plaintiff must show that the defendant reasonably could have foreseen the danger against which the defendant allegedly failed to guard, the plaintiff 'need not demonstrate ... that the precise manner in which the accident happened, or the extent of

injuries, was foreseeable.'" (quoting *Derdiarian v. Felix Contr. Corp.*, 414 N.E.2d 666, 670 (1980)).

Under New York law this duty is broad, including the obligation to take reasonable precautions to protect patrons from dangers that are foreseeable from the arrangement or use of the property and to exercise reasonable care in protecting visitors from the foreseeable, injurious actions of third parties. *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995) (citations omitted); *see also Penchas v. Hilton Hotels Corp.*, 603 N.Y.S.2d 48, 49-50 (App. Div. 1st Dep't 1993) (hotel "has a duty to exercise reasonable care to protect guests . . . against injury at the hands of third persons . . . and is required to take reasonable protective measures, including providing adequate security, to protect guests or tenants against third-party criminal acts, particularly where the occurrence of criminal activity on the premises was reasonably foreseeable"). To this end, the landowner's duty to control the conduct of guests on its premises is limited in two respects: "first to conduct that it has the opportunity to control and of which it is reasonably aware; and second, to conduct that is foreseeable or expected." *Demarco v. Ouellette*, 04 Civ. 0440 (RJH), 2005 WL 2170557, at *4 (S.D.N.Y. Sept. 7, 2005) (citing *Marianne OO v. C & M Tavern, Inc.*, 580 N.Y.S.2d 549, 550 (App. Div. 3rd Dep't 1992); *Woolard v. New Mohegan Diner*, 686 N.Y.S.2d 445, 446 (App. Div. 2d Dep't 1999)); *see D'Amico v. Christie*, 518 N.E.2d 896, 899-900 (1987). "Applying this rationale, lower courts have recognized that a landowner may have responsibility for injuries caused by an intoxicated guest. Significantly, however, these decisions have uniformly acknowledged that liability may be imposed only for injuries that occurred on defendant's property, or in an area under defendant's control, where defendant had the opportunity to supervise the intoxicated guest." *D'Amico*, 518 N.E.2d at 900 (citations omitted); *see, e.g.*, *Place v. Cooper*, 827 N.Y.S.2d 396,

7

397-98 (App. Div. 4th Dep't 2006). "That duty emanated not from the provision of alcohol but from the obligation of a landowner to keep its premises free of known dangerous conditions, which may include intoxicated guests." *D'Amico*, 518 N.E.2d at 900.

A hotel has no duty to protect a guest from injuring himself in his intoxicated state; and even assuming such duty exists, plaintiff's voluntary consumption of alcohol and reckless action constitute an unforeseeable superseding event absolving the hotel of any liability. *See Sardella v. Hei Hotels No. 101 Inc.*, 715 N.Y.S.2d 748, 749 (App. Div. 2d Dep't 2000) (affirming New York Supreme Court's grant of summary judgment for defendant hotel operator where plaintiff hotel guest sustained injuries after diving into a closed pool in intoxicated state during after-hours). Neither does a hotel have a duty to supervise a minor guest's room, investigate the backgrounds of its guests, and control the conduct of guests' actions when it lacks notice of the alleged criminal propensities of its guests. *See Bennet v. Saeger Hotels, Inc.*, 645 N.Y.S.2d 678 (App. Div. 4th Dep't 1996) (upholding grant of summary judgment to the defendant hotel where 15-year-old hotel guest injured herself after leaping from hotel room window to escape fellow guests who allegedly attempted to impress her into prostitution);

Applying these principles here, and viewing the uncontroverted facts in the light most favorable to plaintiff, the Hotel owed no duty to decedent. As discussed more fully below, the Hotel did not have a duty to protect decedent either from injuring himself or from any acts caused by DeAgnelis because the Hotel had no opportunity to supervise or control the actions either, nor was decedent's death reasonably foreseeable. The uncontroverted evidence demonstrates that defendant could not have reasonably foreseen decedent's death from the various trips to suite 2110 made by its employees spanning the evening of July 11 to the early morning of July 12, 2006. To the extent that decedent's death was the result of his own

8

voluntary consumption of drugs and alcohol in suite 2110, such actions constitute an unforeseeable superseding event absolving the operator of liability for the resulting injuries. Finally, nothing observed by Hotel staff indicated that criminal activity was afoot.

The four room service deliveries of food and alcohol made to suite 2110 between 7:24 p.m. and 9:45 p.m on July 11, 2006 were charged to and paid by DeAngelis, an adult patron at the Hotel. Nothing in the record suggests that during this time period, the Hotel was on notice that decedent had consumed any alcohol or drugs. The first and only time the Hotel was on notice that prescription drugs might have been consumed in suite 2110 was when lobby porter Mr. Lenzy was summoned to pick up a pharmacy prescription and made his first trip to suite 2110 for its delivery. However, nothing in the evidence suggests that the Hotel knew the content of the prescription or was on notice that it was used in an illegal or recreational manner by any guest in suite 2110.

Mr. Lenzy testified at his deposition that he was summoned by the concierge desk to pick up a prescription from a pharmacy, an errand that he ran on a regular basis for other patrons of the hotel. (*Id*. at 15-16.) He was given the name that the prescription was under and the hotel room number for its delivery, but did not know the content of the prescription or open the envelope it came in. (*Id*. at 16-17, 20-21.) According to Mr. Lenzy, an older gentleman in suite 2110 opened the door to receive the delivery and gave him a tip, but Lenzy did not see, step into, or observe anything within the room. (*Id*. at 22.) Lenzy testified at his deposition that on his second trip to suite 2110 to pick up money for the purchase of cigars and soda, he entered the room and observed a young girl sleeping in a bed and an older man and a young male seated at the table. (*Id*. at 45.) Lenzy observed food from room service and wine on the table, but did not recall either of the two men to appear intoxicated. (*Id*. at 48-50.) On his third and last trip to

9

suite 2110 for the delivery of cigars and sodas, the decedent himself opened the door and DeAngelis gave him a tip, but Mr. Lenzy did not step into the suite.  (*Id*. at 51-53.)  Lenzy did not recall that he smelled marijuana in suite 2110 on any of the three trips.  (*Id*. at 44-45, 53.)

The first time that the Hotel had any notice that the decedent himself may have consumed alcohol was between 1:00 a.m. and 2:00 a.m. on July 12, 2006, when housekeeping attendant Mr. Hossain went to suite 2110 at the request of his manager to clean the room.  Mr. Hossain testified at his deposition that he observed vomit on the floor and a young man lying face down on the bed "in the proper position" for someone who was sleeping  (Hossain Dep. at 56, 145, 147.)  The older man in the room told Mr. Hossain that the vomit came from the young man, who had thrown up from drinking too much, and that Mr. Hossain should not make the bed because the boy was drunk.  (Hossain Dep. at 60, 147-48.)  However, no one asked Mr. Hossain to call for help or to seek medical attention, and neither DeAngelis nor his daughter expressed any concern.

Moreover, there is nothing in the record to indicate how or when the decedent ingested the narcotics that contributed to his death – whether he (or someone else) brought them to the hotel, whether they were those picked up by Hotel staff, or provided in some other way.  As noted above, the uncontroverted record indicates that Hotel staff did not know what was in the bag picked up from the pharmacy and delivered to Room 2110.  It would be unreasonable to impose a duty on the hotel to supervise what a guest does with his medication, particularly where, as here, "the realities of every day experience show us that, regardless of the measures taken, there is little expectation that the one made responsible could prevent the negligent conduct [of the other]."  *Pulka v. Edelman*, 40 N.Y.2d 781, 785 (1976).

Plaintiff relies on *Struebel v. Fladd*, 905 N.Y.S.2d 732 (App. Div. 4th Dep't 2010), a case in which the plaintiff's claim of negligent supervision arose from minor decedent's death during

a party at defendant's residence where alcohol was consumed, for the position that issues of fact exist as to whether defendant "had the opportunity to control the conduct of third persons on premises and was reasonably aware of the need for such control." *Id*. at 734 (internal quotations marks omitted). However, the Appellate Division, Fourth Department in *Struebel* went on to note that liability for negligent supervision may be imposed on the defendant only for injuries that occurred in an area under defendant's control, where defendant had the opportunity to supervise the intoxicate guest. *See id.* The facts in the present case are sufficiently different; as the Court has noted, nothing in the record suggests that the Hotel had the opportunity to control or supervise decedent's or DeAngelis' conduct in the privacy of their hotel room.

Plaintiff correctly notes that "[a]lthough a plaintiff must show that the defendant reasonably could have foreseen the danger against which the defendant allegedly failed to guard, the plaintiff 'need not demonstrate ... that the precise manner in which the accident happened, or the extent of injuries, was foreseeable,'" citing *Mays v. City of Middletown*, 895 N.Y.S.2d at 182 (See Mem. in Opp'n of Def.'s Mot. at 4-5.) However, here, nothing in the record supports the claim that any injury to decedent was reasonably forseeable.

Plaintiff attempts to argue that Hotel had actual or constructive knowledge of criminal conduct within Room 2110, and as such, the harm flowing from that conduct, including the decedent's demise, was forseeable. In support of this claim, plaintiff relies on various sections of the New York Penal Law to suggest that the Hotel should have foreseen the risk of injury or death to decedent. "To recover damages from an owner of real property for injuries caused by the acts of criminals on the premises, a plaintiff must produce evidence indicating that the owner knew or should have known of the probability of conduct on the part of third persons which was likely to endanger the safety of those lawfully on the premises.") *Howard-Seay v. Dorchester*

11

*Towers Associates*, 642 N.Y.S.2d 945, 946 (App. Div. 2d Dep't 1996) (internal quotation marks and citations omitted); *see also*, *Pascarelli v. LaGuardia Elmhurst Hotel Corp.*, 742 N.Y.S.2d 98, 99 (App. Div. 2d Dep't 2002) ("A hotel has a duty to take precautions against 'a third party's foreseeable criminal conduct.'") (citations omitted).

However, viewing the facts in the light most favorable to plaintiff, nothing in this record suggests that the Hotel was aware of conduct rising to the level of criminal activity by the decedent, DeAngelis, or any other occupant of suite 2110 while they were on hotel premises, or was aware that DeAngelis had any criminal propensities. *Cf. Penchas v. Hilton Hotels Corp.*, 603 N.Y.S.2d 48 (App. Div. 1st Dep't 1993) (affirming that triable issues of fact exist as to whether defendant hotel owed the plaintiffs a duty to adequately protect their person and property from third-party criminal acts in hotel driveway where criminal activity was reasonably foreseeable, in light of one hotel employee's indication that he had prior knowledge of criminal activity in said driveway). All room service deliveries, some of which included alcohol, made to suite 2110 on the evening of July 11, 2006 were charged to and paid by DeAngelis, an adult guest at the Hotel, and such deliveries were routine for the Hotel.

Plaintiff relies on *Rivera v. 21st Century Rest., Inc.*, 604 N.Y.S.2d 106 (App. Div. 1st Dep't 1993) in support of the argument that defendant had a duty of care to its guests to control the conduct of persons present on its premises when it has the opportunity to control or is reasonably aware of the necessity for such control. (*See* Mem. in Opp'n of Def.'s Mot. at 15.) In *Rivera*, the Appellate Division, First Department affirmed that the injury suffered by the plaintiff on the defendant's premises was neither unforeseeable nor unexpected, given that the defendant had notice of criminal activity on its premises twenty minutes prior to an assault but failed to summon the police. 604 N.Y.S.2d at 107. In the present case, however, nothing in the

record indicates that any Hotel employee witnessed criminal activity in suite 2110 that would have put the Hotel on notice of forseeable criminal conduct or injury to Mr. Bensbeur.

Plaintiff also cites *Fanelli v. di Lorenzo*, 591 N.Y.S.2d 658 (App. Div. 4th Dep't 1992) for the position that a hotel could be held liable for an intoxicated guest's criminal conduct regardless of whether the resulting harm to another guest was intentional. (*See* Mem. in Opp'n of Def.'s Mot. at 14.) In *Fanelli*, plaintiff's claims against the hotel were grounded in negligence and liability from violating the Dram Shop Act by selling alcohol to another intoxicated guest, who allegedly assaulted plaintiff in her room after becoming intoxicated. 591 N.Y.S.2d at 659. The Appellate Division, Fourth Department held that the hotel would be liable to plaintiff even if the intoxicated guest acted without the necessary intent to establish a battery action, *if* the hotel "breached a duty of care owed to plaintiff or violated the Dram Shop Act." *Id*. at 660. In the present case, however, by failing to show that the defendant Hotel was neither aware of criminal conduct, nor could reasonably have foreseen the danger of decedent's death, plaintiff has not demonstrated that the defendant breached any duty of care owed to the decedent by law.

Plaintiff alleges that the Hotel maintained a criminal nuisance, in violation of Penal Law section 260.46 because there was marijuana usage in Room 2110, and Hotel employees aware of regular usage of marijuana by guests while on Hotel premises which the Hotel repeatedly chose to ignore. (*See* Mem. in Opp'n of Def.'s Mot. at 21-22.) Both allegations are belied by the record, and fail to support a triable claim against the Hotel. While hotel room records show that on July 12, 2006, at 1:23 a.m. and 2:04 a.m. two complaints about noise and the odor of drugs coming from room 2110 were made by occupant(s) of a neighboring room on the same floor (*see* August 12, 2010 Letter (Doc. No. 39, Attach. 7) at 2), the record contains no evidence that these complaints were true. In fact, there is no mention of marijuana or drugs in the security
13

reports written by Mr. Laskas and Mr. Carrasquillo, the two security officers at the Hotel dispatched to investigate the two complaints.  Moreover, while plaintiff claims that on more than ten occasions, security officer Nunez reported to his supervisor at the Hotel that guests were drunk, smoking marijuana and partying too much but never remembered the Hotel to take corrective measures (see Pltf. 56.1 Stmt. in Supp. Cross-mot. for Summ. J. (Doc. No. 46) ¶15), this is simply an inaccurate description of Mr. Nunez's testimony, which unequivocally states that Nunez did not recall any complaints about marijuana smoking at the Hotel (*See* Nunez Dep. at 76, 78).  The Hotel can hardly be said to have engaged in criminal nuisance in violation of law.

## CONCLUSION

For the reasons stated in this Memorandum and Order, defendant's motion for summary judgment (Doc. No. 33) is granted in its entirety; plaintiff's cross-motion for summary judgment (Doc. No. 37) is denied, and this action is dismissed.  The Clerk of the Court is directed to enter judgment accordingly, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
      August 27, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge